THOMAS, Justice.
We will refer to the parties according to their positions in the present appeal.
The appellee, Bernold H. Stoffer, filed his bill for specific performance of a contract into which an option had ripened. The chancellor dismissed the bill and the matter was brought here for review. It appeared that the appellee had secured an outstanding mortgage to which the deed and the purchase price mortgage were, under the option, to have been subject and had offered the appellant a first mortgage, instead of a second one. Inasmuch as the appellant had been offered more than she was to receive, that is, a first mortgage to secure the balance, and appellee had taken an assignment of the outstanding mortgage instead ' of receiving title subject to the 'indebtedness it secured, we decided that the appellant could not prevail in her effort to defeat the suit and we reversed the decree of dismissal. Stoffer v. Adams, Fla., 54 So.2d 801.
After .the mandate reached the chancellor he permitted the appellant to answer, whereupon some of the allegations of the bill were admitted, some denied, and four affirmative defenses were put forth. We will analyze the relevant parts of the answer.
It was admitted that the appellant granted the appellee an option to buy certain land and equipment for the price of $23,100; that it was provided in the agreement that the appellee had “the right to complete the transaction on or before sixty days” from its date; that appellee was to deliver a mortgage for $9,950 which represented the purchase price after deducting the amount of- the unpaid mortgage and the sum of $50 paid for the option.
The appellant also admitted that appellee had advised her he desired to complete the transaction and had tendered his mortgage and a deed for her execution. She further admitted that she had refused to accept the mortgage and sign the deed. She claimed to be without knowledge of the assignment of the outstanding mortgage to appellee and then, despite her prior admission she said she had no knowledge of his readiness to consummate the deal.
At this point it is obvious that the ap-pellee was entitled to a decree, especially in view of our remarks in the cited case; 'with One provision, that he prove purchase of the outstanding mortgage.
*886 The paragraphs setting out affirmative defenses should now be digested. The appellant was lacking in legal training and had the "impression that she was not obligated to sell * * * within the sixty day period” but thought “she was only giving * * * [appellee] the exclusive right to buy in the event she decided to sell” within that time. (Italics supplied.) Her inexperience and the “manifestly inadequate” consideration demonstrated, she charged, the “inequality-of the contracting parties.” We dismiss this so-called defense with the remark that it is completely neutralized by appellant’s admissions and the familiar rule upholding the integrity of written instruments.
Next it was asserted that the appellant and Robert H. Kelcy, the mortgagee, who were once husband and wife, had operated a business on the property involved which they sold to one Sacco prior to their divorce. Later Sacco conveyed it to appellant who assumed the mortgage, to which we have alluded, evidently given by Sacco to Kelcy. The amount due on the mortgage at the time of the option had subsequently been reduced to an amount the pleader did not state. Just how this constitutes a defense we do not understand, except that payments made after the option became a contract would have to be taken into account in a final adjudication. As we shall see this course was followed.
The next to last defense sets out that Kelcy at one time desired to obtain a one-half interest in the property and to operate the business with the appellant on a partnership basis in return for cancellation of his mortgage. When this proposition was rejected, Kelcy wished to acr quire all the property, and when this offer was refused he got drunk and attempted to chase the appellant’s customers away. What this had to do with appellee and his transaction with appellant is incomprehensible, except for what was stated in the last defense, which we now reach.
The appellee, as it is alleged in defense numbered four, knew about these difficulties between appellant and her erstwhile husband, Kelcy, so he agreed with Kelcy to purchase her business and when he approached her to buy he pretended that he was acting for himself when he was actually representing Kelcy. She would have charged much more had she known Kelcy was in the background. She indicated that appellant had procured an assignment of the Kelcy mortgage and asserted that when she learned of the “fraudulent scheme” she reneged. This ‘defense’ is little stronger than the other three.
The chancellor sustained a motion to strike the affirmative defenses and allowed the appellant to amend. No amendment was offered, then the chancellor granted the appellee’s motion for decree of specific performance on the pleadings.
We think the chancellor committed no error in striking that part of the answer setting out the so-called affirmative defenses. It is clear to this court as it was to him that the first three were wholly lacking in merit, and we see no reason further to discuss any of them except that part of the last one referring to an undisclosed principal. This point and the one about the purchase of the mortgage by appellee, raised by the denial of the averment that appellee had got an assignment from Kelcy, are the only matters now deserving comment, so far as the pleadings are concerned. The matter of the assignment may be dismissed with the observation that it was neutralized by her reference to the assignment in the fourth affirmative defense.
We think the appellant could not repudiate her agreement with appellee ora. the ground that she did not wish her former husband eventually to get the property.. She gave the option without any restriction, as to assignment; on the contrary it was. expressly provided in the instrument that rights under it should enure to appellee’s, assigns. Her position is enfeebled by the reason given for not wishing the former husband to obtain the property for she-charged that if it had been known that Kelcy was the “real party in interest” she *887 “would have placed the purchase pnce at a much higher figure * * This statement makes the whole paragraph resemble more nearly spite than serious defense.
Naturally there had been a change in debits and credits between the parties since the metamorphosis of the option from a unilateral to a bilateral contract, IS September 1950, and during the litigation which has continued for about three years, because payments were falling due on the outstanding mortgage and the property was being used by the appellant. The chancellor, therefore, had testimony taken with reference to these debits and credits which was a sensible as well as necessary way to determine the matter even though a decree on the main issues was granted on the pleadings. Upon the information received from the witnesses he determined that the principal amount of the mortgage, executed to Kelcy and assigned to appellee, had been reduced to $3,800 by payments made since the option so he credited the appellant with the total of these payments, $9,300, charged her with rental of the property in the sum of $7,250, leaving a net credit of $2,050 which he added to the sum of $9,950, the amount for which the appellee was to give a mortgage under the option, and he required the appellee to deliver a mortgage to the appellant for $12,000. He also directed that the appellee “assume the first mortgage now upon said properties, * *
We find no fault with the computation or the determination of the issues but in view of the representation to this court that the mortgage had been assigned to the ap-pellee, we think the mortgage should be cancelled instead of assumed and we direct the decree to be amended in that respect.
Otherwise, the decree is
Affirmed.
ROBERTS, C. J., TERRELL, J., and LOPEZ, Associate Justice, concur.